People v Herrera (2022 NY Slip Op 00949)





People v Herrera


2022 NY Slip Op 00949


Decided on February 10, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 10, 2022

Before: Manzanet-Daniels, J.P., Gische, Kern, Mazzarelli, Gesmer, JJ. 


Ind No. 2615/16 Appeal No. 15093 Case No. 2018-4686 

[*1]The People of the State of New York, Respondent,
v
Jean Herrera, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (John Vang of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Alexander Michaels of counsel), for respondent.



Judgment, Supreme Court, New York County (Daniel P. Conviser, J.), rendered June 19, 2018, convicting defendant, after a jury trial, of murder in the second degree (depraved indifference murder), assault in the first degree (two counts), assault in the second degree (two counts), reckless endangerment in the first degree, unlawful fleeing a police officer in the first degree, and aggravated unlicensed operation of a motor vehicle in the second degree, and sentencing him to an aggregate term of 18 years to life, unanimously affirmed.
The verdict with regard to the finding of depraved indifference was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 349 [2007]). Depraved indifference is a culpable mental state and "'is best understood as an utter disregard for the value of human life a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not'" (People v Feingold, 7 NY3d 288, 296 [2006], quoting People v Suarez, 6 NY3d 202, 214 [2005]). "[C]ases involving a depraved indifference to human life are highly fact-specific and dependent upon the individual defendant's particular mental state  a factor that may be extremely difficult to establish" (People v Heidgen, 22 NY3d 259, 276 [2013]), but it may still be proved circumstantially (id. at 279; Feingold, 7 NY3d at 296).
Here, the evidence sufficiently supports the conclusion reached by the jury that defendant acted with depraved indifference when he crashed his car into an oncoming car, killing one person and injuring two others. While fleeing from the police, defendant drove 14 blocks against oncoming traffic on the West Side Highway, a major roadway, despite openings in the median between the north and southbound lanes, while running several red lights and driving onto the curb and sidewalk. Additionally, defendant did not avail himself of parking lots and driveways on the west side of the Highway, where he could have pulled off to avoid any collision with an oncoming vehicle. Heading north, the Highway merges into, and becomes, the Henry Hudson Parkway at the intersection of 57th Street. Instead of utilizing the last available opportunity to turn into the north bound lanes, defendant made the decision to continue driving in the wrong direction and entered onto the Parkway. It is unrefuted that the Parkway had no breaks in the median through which he could return to the northbound lanes and that oncoming cars were going even faster there than on the Highway because the speed limit increased from 35 mph to 50 mph. After he got on the Parkway, defendant remained in the lane immediately to the left of the concrete barrier separating the northbound and southbound lanes, made no effort to change lanes or to swerve to avoid oncoming vehicles and made no effort to stop or slow down, despite the fact that he was now on a parkway. He continued driving this way on the [*2]Parkway for seven blocks at which time he collided, head-on, with a vehicle driving in the proper direction in the southbound lane. Based on the foregoing, the evidence supports the conclusion that at the time defendant entered the Parkway instead of exiting from the Highway, he had no regard for the risk of death to others (see People v Heidgen, 22 NY3d at 277 [2013] ["One who engages in what amounts to a high speed game of chicken, with complete disregard for the value of the lives that are thereby endangered, is undoubtedly an individual whose culpability is the equivalent of an intentional murderer"]).
Defendant's reliance on People v Maldonado (24 NY3d 48 [2014]) is misplaced as that case is distinguishable. In Maldonado, the Court of Appeals found insufficient evidence to support a conviction for depraved indifference murder because the defendant "actively attempt[ed] to avoid hitting other vehicles by swerving, conduct which establishes a lack of depraved indifference" and because defendant's conduct in driving in the wrong direction was "episodic," "brief" and done "in order to pass other cars, not as part of a deadly game" (id. at 53-54 [internal quotation marks omitted]). Furthermore, the defendant in Maldonado was unfamiliar with the roads he was driving on, thereby resulting in his turning onto one-way streets with oncoming traffic. However, there is no such claim here. Maldonado is completely unlike this case, where defendant's conduct in driving in the wrong direction on the Parkway was part of a deadly game, was not brief or episodic, was not done in order to pass other cars and where defendant made no attempt to avoid a collision with another car.
People v Prindle (16 NY3d 768 [2011]), which also involved a high-speed police chase with the defendant driving erratically before hitting another car and killing one of its occupants, is distinguishable. The Court of Appeals held that the evidence adduced at trial was insufficient to support the conclusion that the defendant evinced a depraved indifference to human life (id. at 770-771), because the defendant was "actively attempting to avoid hitting other vehicles" (Maldonado, 24 NY3d at 56-57). In this case, unlike in Prindle, defendant drove in the wrong direction on the Parkway at a high speed and did not actively attempt to avoid hitting another vehicle.
We also find that the verdict with regard to the finding of "serious physical injury" as to one of the victims was based on legally sufficient evidence and was not against the weight of the evidence. "Serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00[10] [emphasis added]). Although the Penal Law does not define the term "protracted," "'nothing in the statute limits 'protracted' impairments to those that [*3]are permanent or measured in years'" (People v Cooper, 192 AD3d 644, 644 [1st Dept 2021], lv denied 37 NY3d 964 [2021], quoting People v Wilkins, 138 AD3d 581, 581 [1st Dept 2016], lv denied 27 NY3d 1141 [2016]).
The evidence sufficiently supports the conclusion reached by the jury that this victim sustained a "protracted impairment of health" (Penal Law § 10.00[10]). The medical records showed, among other things, that he sustained a comminuted fracture in the left hip socket and right ulna, he underwent open reduction internal fixation surgery, which entailed installing metal plates and screws to hold broken bone pieces together, his ability to walk was "severely limited or nonexistent," he required "significant assistance w[ith] all functional mobility tasks" and he was referred to an "Acute Inpatient Rehabilitation" facility upon his discharge from the hospital.
We perceive no basis for reducing the sentence.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 10, 2022